```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
MARILYN BLOCH,                                       :

                    Plaintiff,                       :    10 Civ. 8424 (JSR) (GWG)

               -v.-                                  :    REPORT AND
                                                          RECOMMENDATION
BANK OF AMERICA CORP. a/k/a BANK OF                  :
AMERICA,
                                                     :
                    Defendant.
---------------------------------------------------------------X
```

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

Plaintiff Marilyn Bloch, proceeding pro se, brought this suit against Bank of America Corp. a/k/a Bank of America ("BOA"), complaining that BOA sent blank checks that she had ordered to an address in Brooklyn, New York without her consent. BOA has moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons stated below, the motion should be granted.

I.      BACKGROUND

        A.      The Instant Proceedings

Bloch commenced this action through a complaint dated October 18, 2010. See Complaint, filed Nov. 8, 2010 (Docket # 2) ("Compl."). Jurisdiction is premised on diversity. See id. at 1. The complaint is brief and alleges that BOA sent checks "to the wrong address in New York" without Bloch's consent. Id. ¶ 3; see id. ¶ 4. The address at issue is 25 Bay 29th Street, Brooklyn, New York, which is identified as the home of a Roberta Pike. Id. ¶ 4. Bloch states that Pike refused to give Bloch the checks and "kept them for her [o]wn purposes forging them." Id. Bloch alleges that she has "suffered financial loss . . . [and] no access to her money,"

along with psychological harm.  Id. ¶ 5.[1]

On March 2, 2011, BOA moved to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  See Defendant Bank of America, N.A.'s Notice of Motion to Dismiss Complaint, filed Mar. 2, 2011 (Docket # 15).  By order dated May 12, 2011, the Court noted that BOA had not provided proof that the motion complied with Local Civil Rule 12.1, requiring a party moving to dismiss the complaint of a pro se litigant to serve a "Notice to Pro Se Litigant Who Opposes a Rule 12 Motion Supported by Matters Outside the Pleadings."  See Order, filed May 12, 2011 (Docket # 22).  Rather than requiring BOA to serve this notice, however, the Court directed BOA to refile its motion as a motion for summary judgment, specifying in a Local Civil Rule 56.1 statement which material facts it was relying on in support of the motion.  Id. at 1.

---

[1] Bloch's complaint makes reference to Pike telling a "judge in New York" that she did not have anything belonging to Bloch.  Id. ¶ 5.  It appears that this is a reference to a separate action Bloch brought in the Eastern District of New York against Pike, who is Bloch's cousin. See Bloch v. Pike, 09 Civ. 5503 (E.D.N.Y. filed Dec. 14, 2009).  In that case, Bloch sought title to the property located at 25 Bay 29th Street in Brooklyn, which was alleged to be the residence that was once owned by Bloch's mother, but which was later deeded to Bloch's mother's sister, who is the mother of Pike.  See Bloch v. Pike, 2010 WL 2606355, at *1 (E.D.N.Y. May 20, 2010), adopted by 2010 WL 2606270 (E.D.N.Y. June 22, 2010).  Included among Bloch's claims was a claim that Pike had opened a box of checks belonging to Bloch.  Id. at *5.  The Eastern District dismissed all claims against Pike, including any claims based on Pike's opening of this box of checks.  See id.  With respect to this claim, the Court noted:

> Here, it appears that [Pike's] initial possession of the checks was lawful because they were mailed to her address.  Plaintiff does not allege that she demanded that Pike send her the checks or that Pike refused any such demand.  Nor does plaintiff allege that Pike used the checks to withdraw funds from Bloch's account or otherwise wrongfully disposed of Bloch's property.  See Am. Compl. ¶ 13 (accusing defendant of opening mail containing checks addressed to plaintiff and "keeping them for years").

Id.

On June 8, 2011, BOA moved for summary judgment. Bloch submitted opposition papers and BOA replied to Bloch's opposition.[2] Bloch has submitted additional post-briefing materials, which we have also considered to the extent described in the next section.[3]

  B. <u>Evidence Presented on the Summary Judgment Motion</u>

    1. <u>Compliance with Local Rule 56.1</u>

Rule 56.1 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Rule 56.1) provides that "[t]he papers opposing a motion for summary judgment shall include a correspondingly numbered paragraph responding

---

[2] <u>See</u> Defendant Bank of America, N.A.'s Notice of Motion for Summary Judgment, filed June 8, 2011 (Docket # 28) ("Notice of Motion"); Defendant Bank of America, N.A.'s Memorandum of Law in Support of Motion for Summary Judgment, filed June 8, 2011 (Docket # 29); Local Civil Rule 56.2 Notice, filed June 8, 2011 (Docket # 30); Defendant's Statement of Undisputed Facts Pursuant to Local Rule 56.1, filed June 8, 2011 (Docket # 31) ("Def. 56.1 Stat."); Affidavit of Miriam Rivera in Support of Defendant Bank of America, N.A.'s Motion to Dismiss Complaint, filed Aug. 4, 2011(Docket # 38) ("Rivera Aff."); Opposition to Answer of Defendant, dated June 7, 2011 (Docket # 41); Opposition to Dismiss: Affidavit in Support of Motion, filed Aug. 4, 2011 (Docket # 43) ("Bloch Aff."); Plaintiff's General Denial to Statement of Undisputed Facts Pursuant to Local Rule 56.1, dated June 15, 2011 (Docket # 40) ("Pl. 56.1 Stat. 1"); General Denial to Statement of Facts Under 56.1, filed Aug. 4, 2011 (Docket # 42) ("Pl. 56.1 Stat. 2"); Defendant Bank of America, N.A.'s Reply Memorandum of Law in Further Support of Motion for Summary Judgment, dated July 14, 2011 (Docket # 36); Reply Declaration of Meredith L. Fabiaschi, Esq. in Further Support of Defendant Bank of America, N.A.'s Motion for Summary Judgment, dated July 14, 2011 (Docket # 37).

[3] The recent papers include documents purporting to be additional 56.1 statements, <u>see</u> Plaintiff's Statement Saying There Are Disputed Facts: General Denial Under 56.1, filed Aug. 4, 2011 (Docket # 44) ("Pl. 56.1 Stat. 3"); Answer of Plaintiff to Rule 56B General Denial to Undisputed Facts, dated July 18, 2011 (Docket # 45) ("Pl. 56.1 Stat. 4"). One of these 56.1 statements, which is undated, is postmarked July 18, 2011. <u>See</u> Pl. 56.1 Stat. 3. Accordingly, it is unclear whether this statement was submitted before or after Bloch received BOA's reply papers. The other 56.1 statement is dated after BOA's reply papers. <u>See</u> Pl. 56.1 Stat. 4. BOA responded to these additional 56.1 statements by letter to the Court dated July 27, 2011, stating that BOA "stands on its papers." <u>See</u> Letter from Fabiaschi, dated July 27, 2011 (Docket # 39). The Court notes that throughout this litigation Bloch has sent numerous letters to the Court, not all of which have been docketed.

to each numbered paragraph in the statement of the moving party," Local Rule 56.1(b), and each statement must be followed by a citation to admissible evidence, Local Rule 56.1(d).  Pursuant to Local Rule 56.1(c), "[e]ach numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party."  Local Rule 56.1(c).

     Here, none of Bloch's four statements identified as responses to BOA's Rule 56.1 statement comply with the Local Rule.  In her responses, Bloch merely states that she denies all of the allegations in BOA's statement, other than the statement regarding her current Florida address, without responding to each of BOA's statements separately and without providing citations to evidence to support her denials.  See Pl. 56.1 Stat. 1; Pl. 56.1 Stat. 2; Pl. 56.1 Stat. 3; Pl. 56.1 Stat. 4.  The failure to cite to admissible evidence in support of any of the statements constitutes a violation of Local Civil Rule 56.1(d).  In light of these failings, we deem BOA's assertions in its Rule 56.1 statement to be admitted, see Giannullo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003) ("If the opposing party . . . fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted.") (citation omitted); accord Five Star Hotels, LLC v. Ins. Co. of Greater N.Y., 2011 WL 1216022, at *1 n.1 (S.D.N.Y. Mar. 24, 2011); Carpiniello v. Hall, 2010 WL 987022, at *1 n.1 (S.D.N.Y. Mar. 17, 2010), except that we consider any admissible evidence supplied by Bloch as described in the next paragraph. .

     While not in proper format, Bloch's submissions in response to BOA's 56.1 statement do contain some additional statements of fact.  Two of plaintiff's submissions are under oath, see Pl. 56.1 Stat. 1; Pl. 56.1 Stat. 3, and one of these includes substantive statements of fact, see Pl.

56.1 Stat. 3.  In addition, plaintiff has submitted another document that contains sworn statements.  See Bloch Aff.  Because plaintiff is proceeding pro se, we will consider these sworn statements to determine whether they raise a genuine issue of material fact.  See Wali v. One Source Co., 678 F. Supp. 2d 170, 178 (S.D.N.Y. 2009) ("where a pro se plaintiff fails to submit a proper [opposing statement] . . . , the Court retains some discretion to consider the substance of the plaintiff's arguments, where actually supported by evidentiary submissions") (citations omitted); accord Diagne v. N.Y. Life Ins. Co., 2010 WL 5625829, at *1 (S.D.N.Y. Dec. 8, 2010), adopted by 2011 WL 204905 (S.D.N.Y. Jan. 21, 2011).

    2.    Facts

On December 21, 2005, Bloch opened an account with BOA in the name of "Estate of Martin Bloch, Marilyn Bloch – Personal Representative" (the "Estate Account"), with an account number ending in 3851.  Def. 56.1 Stat. ¶ 5; Rivera Aff. ¶ 7; BOA Business Signature Card (annexed as Ex. D to Notice of Motion) ("Signature Card").  The account was opened at a BOA banking center in South Delray, Florida, according to BOA's usual procedures.  Def. 56.1 Stat. ¶ 7; Rivera Aff. ¶ 7; Signature Card; Acceptable Identification (annexed as Ex. C to Notice of Motion).  A copy of the Signature Card for the Estate Account indicates it was opened using a MasterCard credit card, with an expiration date of November 2007, and a valid Florida state-issued driver's license, ending in number 5900.  Def. 56.1 Stat. ¶¶ 6-8; Rivera Aff. ¶¶ 6-7; Signature Card.  The owner of the MasterCard was listed as having an address of "25 Bay 29th Street Brooklyn NY 11214," and a date of birth of March 10, 1950.  See Def. 56.1 Stat. ¶ 7; Rivera Aff. ¶ 7; Signature Card.  An investigation by BOA confirmed that the driver's license number used to open the Estate Account belongs to Bloch.  Def. 56.1 Stat. ¶ 12; Rivera Aff. ¶ 8.

Bloch executed the Signature Card for the Estate Account as the account's "Personal

Representative." See Def. 56.1 Stat. ¶ 9; Rivera Aff. ¶ 7; Signature Card. The address listed for the account on the Signature Card was "25 Bay 29th Street Brooklyn NY 11214." See Def. 56.1 Stat. ¶ 10; Rivera Aff. ¶¶ 7, 13; Signature Card. The Signature Card states that the Estate Account "shall be governed by the terms and conditions set forth in," inter alia, the "Deposit Agreement and Disclosures" ("Deposit Agreement"). Signature Card; see Def. 56.1 Stat. ¶ 11; Rivera Aff. ¶ 7; Deposit Agreement (annexed as Ex. E to Notice of Motion).

On December 21, 2005, a check in the sum of $128,642.88 was deposited into the Estate Account. Def. 56.1 Stat. ¶ 13; Rivera Aff. ¶ 9; Deposit Ticket, dated Dec. 21, 2005 (annexed as Ex. F to Notice of Motion). This deposit appeared on the monthly statement prepared for the account. Def. 56.1 Stat. ¶ 14; Rivera Aff. ¶ 9; Estate Account Statement 12/21/05 through 12/31/05 (annexed as Ex. G to Notice of Motion) at 1. Also on December 21, 2005, Bloch placed an order for check stock for the Estate Account at the BOA banking center in South Delray, Florida. Def. 56.1 Stat. ¶¶ 15-16; Rivera Aff. ¶ 12; Estate Account Statement 12/21/05 through 12/31/05 at 1 ("Check Order" posted on December 29). BOA's "usual procedure" is to mail the blank check stock to the address of record for the account when a customer places a check stock order. Rivera Aff. ¶ 13; Def. 56.1 Stat. ¶ 17. The address of record for the Estate Account as of December 21, 2005, was 25 Bay 29th Street Brooklyn, NY 11214. Def. 56.1 Stat. ¶ 18; Rivera Aff. ¶ 13; Signature Card.

On December 23, 2005, Bloch opened a personal checking account ("Bloch's Personal Account"), with an account number ending in "0274," at a BOA banking center in East Delray Beach, Florida. Def. 56.1 Stat. ¶¶ 19-20; Rivera Aff. ¶ 18; Signature Card for Bloch's Personal Account (annexed as Ex. K to Notice of Motion). The driver's license used to open this account, the Florida license with a number ending in 5900, was the same as the one used to open the

6

Estate Account.  Def. 56.1 Stat. ¶ 21; Rivera Aff. ¶¶ 18-19; Signature Card for Bloch's Personal Account (annexed as Ex. K to Notice of Motion).  The address on record for Bloch's Personal Account was "C/O Roberta Pike, 25 Bay 29th Street, Brooklyn NY 11214-4001."  Def. 56.1 Stat. ¶ 23; Rivera Aff. ¶ 19; Personal Account Statement 12/23/05 through 1/20/06 (annexed as Ex. J to Notice of Motion).

On December 29, 2005, $128,000 was withdrawn from the Estate Account.  Def. 56.1 Stat. ¶ 24; Rivera Aff. ¶ 14; Estate Account Statement 12/21/05 through 12/31/05 at 1.  This withdrawal was made by check, dated December 29, 2005, paid to the order of "Marilyn Bloch," signed by "Marilyn Bloch, Personal Representative," and endorsed by "Marilyn Bloch."  Def. 56.1 Stat. ¶ 25; Rivera Aff. ¶ 14; Check No. 0991, dated Dec. 29, 2005 (annexed as Ex. I to Notice of Motion).  This check was deposited into Bloch's Personal Account on December 29, 2005.  Def. 56.1 Stat. ¶ 26; Rivera Aff. ¶ 15; Personal Account Statement 12/23/05 through 1/20/06 at 2.  On January 3, 2006, the remainder of the funds in the Estate Account, $615.88, was withdrawn at the BOA banking center in East Delray Beach, Florida.  Def. 56.1 Stat. ¶¶ 27-28; Rivera Aff. ¶ 16; Estate Account Statement 1/1/06 through 1/31/06 (annexed as Ex. G to Notice of Motion) at 1.  The Estate Account was closed in January 2006 with a statement ending balance of $0.  Def. 56.1 Stat. ¶ 29; Rivera Aff. ¶ 16; Estate Account Statement 1/1/06 through 1/31/06.

The Deposit Agreement governed both the Estate Account and Bloch's Personal Account.  Def. 56.1 Stat. ¶ 30; Rivera Aff. ¶ 21; Deposit Agreement.  The Deposit Agreement provides that customers must "report any problem or unauthorized transaction related to a matter shown on" the customer's statement within 60 days after BOA sends the statement to the customer or otherwise makes the statement available.  Deposit Agreement at 44; see Def. 56.1

7

Stat. ¶ 31; Rivera Aff. ¶ 23. BOA's records do not contain any reports regarding problems or unauthorized transactions filed by Bloch with regard to either the Estate Account or Bloch's Personal Account at any time. Def. 56.1 Stat. ¶ 32; Rivera Aff. ¶ 25.

II.     LAW GOVERNING SUMMARY JUDGMENT

Rule 56(a) of the Federal Rules of Civil Procedure states that summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In determining whether a genuine issue of material fact exists, "[t]he evidence of the non-movant is to be believed" and the court must draw "all justifiable inferences" in favor of the nonmoving party. Id. at 255 (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970)). Nevertheless, once the moving party has shown that there is no genuine issue as to any material fact and that it is entitled to a judgment as a matter of law, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial,'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)) (additional citation omitted) (emphasis in original), and "may not rely on conclusory allegations or unsubstantiated speculation," Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998) (citations omitted). In other words, the nonmovant must offer "concrete evidence from which a reasonable juror could return a verdict in his favor." Anderson, 477 U.S. at 256. Where "the nonmoving party bears the burden of proof at trial, summary judgment is warranted if the nonmovant fails to 'make a showing sufficient to establish the existence of an element essential to [its] case.'"

Nebraska v. Wyoming, 507 U.S. 584, 590 (1993) (quoting Celotex, 477 U.S. at 322) (alteration in original). Thus, "[a] defendant moving for summary judgment must prevail if the plaintiff fails to come forward with enough evidence to create a genuine factual issue to be tried with respect to an element essential to its case." Allen v. Cuomo, 100 F.3d 253, 258 (2d Cir. 1996) (citing Anderson, 477 U.S. at 247-48). The same rules apply to a pro se litigant. See, e.g., Bennett v. James, 737 F. Supp. 2d 219, 226 (S.D.N.Y. 2010) ("Notwithstanding the deference to which a pro se litigant is entitled, as well as the deference accorded to a non-movant on a summary judgment motion, the non-movant must produce specific facts to rebut the movant's showing and to establish that there are material issues of fact requiring a trial.") (internal punctuation and citations omitted).

III.   DISCUSSION

   A.   Applicable Contract and Law

Bloch does not dispute that on December 21, 2005, she opened the Estate Account with BOA in the name of "Estate of Martin Bloch, Marilyn Bloch – Personal Representative," Def. 56.1 Stat. ¶ 5; Rivera Aff. ¶ 7; Signature Card, or that she signed the Signature Card for the Estate Account as the account's "Personal Representative," Def. 56.1 Stat. ¶ 9; Rivera Aff. ¶ 7; Signature Card. Nor does she dispute that the Signature Card states that the Estate Account "shall be governed by the terms and conditions set forth in," inter alia, the Deposit Agreement. Signature Card; see Def. 56.1 Stat. ¶ 11; Rivera Aff. ¶ 7. Thus, the Deposit Agreement controls this dispute.

The Deposit Agreement states that a customer's rights and obligations under the Agreement "are governed by and interpreted according to the laws of the state where [BOA] open[s] [the] account and federal law." Deposit Agreement at 4. Because the Estate Account

9

was opened at a BOA branch in Florida, Def. 56.1 Stat. ¶ 6; Rivera Aff. ¶ 7, Florida law governs Bloch's rights under the Deposit Agreement.

B.  Analysis

The Deposit Agreement provides that a customer "must report problems or unauthorized transactions . . . immediately, by calling the number for Customer Service on [the account] statement." Deposit Agreement at 44. A "problem" and "unauthorized transaction" is defined as including "missing, stolen, or unauthorized checks." Id. The Deposit Agreement states:

> [I]f you do not notify us in writing of suspected problems or unauthorized transactions within 60 days after we send your statement or items, or otherwise make them available, you agree that you cannot make a claim against us relating to the unreported problems or unauthorized transactions, regardless of the care or lack of care we may have exercised in handling your account. . . . In addition, if you fail to report an unauthorized transaction on your account within 30 days (or such lesser period as is specified in the state law applicable to your account) following the closing date of the statement containing information about the first unauthorized transaction, we are not liable to you for subsequent unauthorized transactions on your account by the same person. You may not bring any legal proceeding or action against us to recover any amount alleged to have been improperly paid out of your account unless you have given us the notice described above.

Id. at 44-45.

Fla. Stat. § 674.103(1), Florida's version of Article 4 of the Uniform Commercial Code, provides: "The parties to the agreement cannot disclaim a bank's responsibility for its lack of good faith or failure to exercise ordinary care or limit the measure of damages for the lack or failure. However, the parties may determine by agreement the standards by which the bank's responsibility is to be measured if those standards are not manifestly unreasonable." Fla. Stat. § 674.103(1).

If the 60-day reporting period in the Deposit Agreement is enforceable, Bloch's claims are barred by the terms of the Deposit Agreement. Bloch ordered the checks on December 21,

2005. Def. 56.1 Stat. ¶¶ 15-16; Rivera Aff. ¶ 12; Estate Account Statement 12/21/05 through 12/31/05 at 1 ("Check Order" posted on December 29). Bloch did not make any complaint to BOA regarding problems or unauthorized transactions with regard to the Estate Account or her Personal Account. See Def. 56.1 Stat. ¶ 32; Rivera Aff. ¶ 25. Bloch was obviously aware that the checks purportedly had not arrived at some point shortly after she placed the order on December 21, 2005. She did not file this action, however, until November 8, 2010, nearly five years later. The complaint challenges only the failure to send the checks to the proper address. There is no evidence of any debiting of the Estate Account due to a forged check at any time. The account itself was closed in January 2006. Def. 56.1 Stat. ¶ 29; Rivera Aff. ¶ 16.

      Bloch states that she "never lived or gave" the Brooklyn address; that she "was not told her bank statements and checks were [g]oing to 25 Bay 29th St., Brooklyn, until Judge Gold told her about it," Pl. 56.1 Stat. 3 at 1 ¶ 2; that the checks were sent "[t]o the wrong address," id. at 2 ¶ 7; and that BOA "do[es] not [k]now where [she] lives," Bloch Aff. at 1 ¶ 3. These statements, however, are insufficient to contravene the documentary evidence submitted by BOA that it was Bloch who opened the Estate Account on December 21, 2005, see Def. 56.1 Stat. ¶¶ 5, 9; Rivera Aff. ¶ 7; Signature Card, and that the Deposit Agreement governs this account, see Def. 56.1 Stat. ¶ 30; Rivera Aff. ¶ 21. Bloch also asserts that she "filed numerous complaints against Bank of America." Bloch Aff. ¶ 10. The complaints she is referencing, however, are not specified by type or date. To the extent she intends to refer to the attachments to her affidavit, these consist of complaints in 2009 through 2011, made to regulators or to Bank of America. See id. They do not controvert the fact that Bloch did not make any complaint to BOA at any time in the 2005-2006 time period during which the checks she ordered never arrived. Other statements made by Bloch in her submissions appear unrelated to the claim made in the complaint. See, e.g., Bloch

Aff. ¶ 3 (complaining about a "courtesy check" sent to a "Mr. Louis Toussinant" on an unspecified date).[4]

Accordingly, we now turn to the question of whether the 60-day period in the Deposit Agreement for notifying BOA of suspected problems is "manifestly unreasonable" under Fla. Stat. § 674.103(1). Case law has upheld time limitations for reporting problems to a bank where, as is true here, the agreement does not eliminate the bank's duty of good faith or the measure of damages. See, e.g., Graves v. Wachovia Bank, N.A., 607 F. Supp. 2d 1277, 1280 (M.D. Ala. 2009). Time period provisions of this kind "'encourage[] vigilance by both parties to a deposit contract'" and are "'in accord with public policy by limiting disputes in a society where millions of bank transactions occur every day.'" Basse Truck Line, Inc. v. First State Bank, 949 S.W.2d 17, 21-22 (Tex. App. 1997) (quoting Parent Teacher Ass'n, Pub. Sch. 72 v. Mfrs. Hanover Trust Co., 138 Misc. 2d 289, 295 (Civ. Ct. 1988)). Moreover, the Florida District Court of Appeal has enforced a contract with a required notification period of sixty days. See Bank of Am., N.A. v. Putnal Seed & Grain, Inc., 965 So. 2d 300, 301 (Fla. Dist. Ct. App. 2007) ("The agreement between the parties does not disclaim the bank's responsibility to exercise ordinary care and it does not limit the bank's damage for its failure to exercise such care. Accordingly, the Deposit Agreement is not in violation of section 674.103(1), and it is a valid agreement."). And a number of other courts have agreed with the Florida District Court and enforced contracts with

---

[4] While it is somewhat beside the point, the Court notes that there is no evidence that BOA did anything improper in sending the checks to the address at 25 Bay 29th Street, Brooklyn, New York, given that it was the address on record at BOA for the Estate Account when the checks were ordered. Rivera Aff. ¶ 13; Signature Card. And there is no evidence that Bloch ever changed her address for this account. Indeed, the address on record for Bloch's Personal Account, opened by Bloch two days after she opened the Estate Account, was similarly "25 Bay 29th Street, Brooklyn." Def. 56.1 Stat. ¶ 23; Rivera Aff. ¶ 19; Personal Account Statement 12/23/05 through 1/20/06.

notification periods of sixty days or fewer.  See Graves, 607 F. Supp. 2d at 1280 (40-day time frame for reporting any alleged forgeries not "manifestly unreasonable" under Alabama law); Nat'l Title Ins. Corp. Agency v. First Union Nat'l Bank, 263 Va. 355, 363 (2002) (60-day period for reporting unauthorized signatures or alterations not "manifestly unreasonable" under Virginia state code) (internal quotation marks omitted); Peak v. Tuscaloosa Commerce Bank, 707 So. 2d 59, 64-65 (La. Ct. App. 1997) (upholding contract with 30-day notification period).  Accordingly, we conclude that the Florida courts would uphold the Deposit Agreement here and thus Bloch's claim is barred by that agreement.

Bloch argues that the issue of whether her claim is precluded by contract is barred by the doctrine of res judicata as it was previously ruled on by the Court "months ago."  See Pl. 56.1 Stat. 3 at 2 ¶¶ 4-5; Bloch Aff. ¶ 2.  But this Court has not previously ruled on the issue of whether Bloch's claim is contractually barred.

Accordingly, summary judgment should be granted in favor of BOA.

III.     CONCLUSION

For the foregoing reasons, BOA's motion for summary judgment (Docket # 28) should be granted.  Its previous motion to dismiss (Docket #15) should be deemed moot.

## PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days including weekends and holidays from service of this Report and Recommendation to serve and file any objections.  See also Fed. R. Civ. P. 6(a), (b), (d).  Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with copies sent to the Hon. Jed S. Rakoff, and to the undersigned, at 500 Pearl Street,

New York, New York 10007.  Any request for an extension of time to file objections must be directed to Judge Rakoff.  If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal.  See Thomas v. Arn, 474 U.S. 140 (1985); Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010).

Dated: August 10, 2011
       New York, New York

                                                                                  GABRIEL W. GORENSTEIN
                                                                                  United States Magistrate Judge

Copies to:

Marilyn Bloch
1350 Tyler Street
Apt #6
Hollywood, FL 33020

Meredith L. Fabiaschi
Wilson, Elser, Moskowitz, Edelman & Dicker LLP
3 Gannet Drive
White Plains, NY 10604

New York, New York 10007. Any request for an extension of time to file objections must be directed to Judge Rakoff. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. See Thomas v. Arn, 474 U.S. 140 (1985); Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010).

Dated: August 10, 2011
      New York, New York

                                      GABRIEL W. GORENSTEIN
                                      United States Magistrate Judge

Copies to:

Marilyn Bloch
1350 Tyler Street
Apt #6
Hollywood, FL 33020

Meredith L. Fabiaschi
Wilson, Elser, Moskowitz, Edelman & Dicker LLP
3 Gannet Drive
White Plains, NY 10604

14